IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

ROCKING CHAIR ENTERPRISES, L.L.C.   )
 d/b/a PAMELA KAY HAWKINS       )
PUBLISHING,                             )
                                   )
       Plaintiff,              )
                                   )
vs.                                )      CIV-04-487-T
                                 )
                                 )
MACERICH SCG LIMITED         )
 PARTNERSHIP, et al.,          )
                                 )
       Defendants.           )

ORDER

Before the court is the defendants' motion for partial summary judgment [Doc. No. 56]. The parties have fully briefed the issues and, at the parties' request, the court heard oral argument on the motion. Pursuant to the court's order, the parties filed supplemental briefs following the oral argument. Plaintiff has also filed two motions to compel the production of certain documents, and plaintiff contends that some of the information discussed therein is pertinent to this motion. The motions to compel will be addressed in a separate order.

Defendants' motion does not address liability, but is limited to the damages which can be recovered if plaintiff proves its allegations of copyright infringement. Defendants argue that: 1) the recoverable damages are limited to the time period within the applicable statute of limitations; 2) plaintiff can only obtain one set of statutory damages; 3) plaintiff is not entitled to recover enhanced damages; and 4) plaintiff cannot recover damages based on "indirect profits."

Summary judgment may be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A material fact is one which may affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  To avoid summary judgment, plaintiffs must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." Id.  The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. MacKenzie v. City & County of Denver, 414 F.3d 1266, 1273 (10th Cir. 2005). Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, defendant is entitled to judgment on that cause of action.  Celotex, 477 U.S. at 322.

It is not disputed that plaintiff is the owner of a copyright registration for a compact disc recording ("CD") called "Rockin' the Day Away,"  which includes a specific song entitled "Baby-Shaped Hole in My Heart"( the "Song"), for which plaintiff has a separate copyright registration. Plaintiff alleges that defendants Macerich SCG Limited ("Macerich"), Dale Smith ("Smith"), American Kids., Inc. ("American   Kids"), American Kids Production, Inc. ("American Kids Production"), and Cox Com, Inc., d/b/a Cox Communications of Oklahoma City ("Cox") infringed the copyright by the unauthorized commercial use of the Song.

The parties agree that  Macerich owns the Oklahoma City retail shopping mall known as Crossroads Mall ("Crossroads").   Crossroads  sponsors a children's event called the Crossroads Kids Club ("Kids Club"), which regularly conducts programs at Crossroads, including educational events and musical activities; the Kids Club began in 1994.  Cox is the co-sponsor of the Kids Club, and defendant  Smith  is the host.   Smith is also founder of American Kids and American Kids

Production, organizations which conduct talent contests for children.  In 1999,  Crossroads asked Smith to assume responsibility for conducting the Kids Club  events at the mall  and act as host for the events.  In early 2000, Crossroads  asked Smith to develop a theme song for the Kids Club. Smith had heard plaintiff's Song, and asked plaintiff for permission to  use the melody of the Song, with new lyrics authored by Smith, for the Kids Club theme.  Plaintiff agreed, so long as the Song was not used for commercial purposes[1], and Smith acknowledged his agreement with that condition in a March 21, 2000 letter to Pamela Hawkins ("Hawkins").  Defendants' Exhibit 1.   Smith then wrote new lyrics and added some instruments,  and began using the Song as the Kids Club theme. On or about July 13, 2000, he sent a cassette recording of the theme song to Hawkins; in a cover letter, he told her the theme song was not being used for "anything other than to open and close the Kids Club meetings."  Defendants' Exhibit 2.

In May 2000 the Kids Club began advertising its events on Cox television, and the theme song was utilized in the 30-second commercials  from May to November 2000 and from January 2001 to October 2001; the advertisements continued until September 21, 2001.  After receipt of a November 20, 2001 demand letter from plaintiff's attorneys, the commercial was discontinued, and the Song was no longer used in the commercials or  the Kids Club theme; a new theme song was used after that date.

Plaintiff contends that defendants' use of the Song infringed the copyright, and  seeks

---

[1]Although defendants refer to the agreement as a nonexclusive license agreement, plaintiff disputes the accuracy of that characterization and contends that plaintiff understood the intended use to be only occasional. It is not disputed that Smith was allowed to use the specific melody for a theme song to be used for the Kids Club. The parties' dispute regarding the scope of the authorized use, and whether Smith exceed that scope, does not impact the limited issues presented by defendants' motion, as liability is not challenged in the motion.

injunctive relief prohibiting defendants from the use of the Song.  Plaintiff also seeks damages for the alleged infringement of its copyright, and  enhanced  damages based on an alleged willful infringement.

Statute of Limitations:

In their motion, defendants first argue that plaintiff's claim is governed by a three-year statute of limitations governing copyright infringement actions[2].  *See* 17 U. S. C. § 507(b).  In a case of a continuing copyright infringement, an action may be brought only for those acts that accrued within the three years preceding the filing of the lawsuit. *See, e.g.,* Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994).  This action was filed on April 20, 2004.  Therefore, according to the applicable statute of limitations, defendants argue,  plaintiff cannot recover damages attributable to any acts of alleged infringement occurring prior to April 20, 2001.

In response, plaintiff urges this court to adopt the "continuing wrong" theory applied  by the Seventh Circuit in a copyright infringement action.  *See* Taylor v. Meirick, 712 F.3d 1112, 1118 (7th Cir. 1983).  According to the continuing wrong theory, "only the last infringing act need be within the statutory period" to allow plaintiff to recover damages for the entire period of alleged infringement.  As plaintiff concedes, the Tenth Circuit has neither adopted nor rejected this theory, but has recognized that other circuits have been divided on the question of its application.  MAI Basic Four, Inc. v. Basis, Inc., 962 F.2d 978, 987 n. 9 (10th Cir. 1992).  However, the majority of circuits addressing the question have rejected the continuing wrong theory in a copyright infringement action.  *See* Bridgeport Music, Inc.v. Diamond Time, Ltd., 371 F.3d 883, 890 (6th Cir.

---

[2]That a claim is partially or wholly barred by limitations is a proper issue for summary judgment adjudication.  Wolf v. Preferred Risk Life Ins. Co., 728 F.2d 1304, 1306-07 (10th Cir. 1984).

2004); Hotaling v. Church of Latter-Day Saints, 118 F.3d 199, 202 (4th Cir. 1997); Roley, 19 F.3d

at 481; Makedwde Publishing Co. v. Johnson , 37 F.3d 180, 182 (5th Cir. 1994); Stone v. Williams,

970 F.2d 1043, 1049-50 (2d Cir. 1992), *cert. denied,* 508 U.S. 906 (1993); Hoste v. Radio Corp. of

America, 654 F.2d 11, 11-12 (6th Cir. 1981).  As defendants point out, two district courts within this

circuit have also rejected the theory.  Fisher v. United Feature Sysndicate, Inc., 37 F. Supp. 2d 1213,

1217 (D. Colo. 1999); In re Independent Service Orgs. Antitrust Litigation, 964 F.2upp 1469, 1478

(D. Kan.  1997).  Thus, the majority of circuits addressing the question have rejected the continuing

wrong theory recognized by theSeventh Circuit.  *See also* Nimmer On Copyright § 12.05 at 12-110

("The prevailing view is therefore that the statute of limitations bars recovery on any damage claim

that accrued over three years prior to filing of suit.").

Although plaintiff argues that the theory would be adopted by this circuit because it has

recognized a continuing wrong theory in some tort cases, the court is not persuaded that the circuit

would adopt the theory in a copyright action, particularly in light of the contrary majority view.

Thus, the court finds that the continuing wrong theory does not apply to plaintiff's claims in this

case, and plaintiff cannot recover damages attributable to an alleged infringement occurring prior

to April 20, 2001.

In the alternative, plaintiff argues that the statute of limitations should be equitably tolled to

commence only when plaintiff became aware of the alleged infringement.  The facts before the court

establish  that  the television advertisements which utilized the Song began in May 2000.  Plaintiff

contends that it became aware of the alleged infringement in  November 2001, when Pamela

Hawkins states that she saw the television advertisement.  Affidavit of Pamela Hawkins ¶ 13,

submitted as an unmarked exhibit to plaintiff's response brief.  However, Hawkins' affidavit also

states that she believed the copyright was infringed when the theme song, incorporating the Song, was used to open and close the Kids Club meetings; according to her affidavit, she learned of that use in July 2000.  *Id.,* ¶ 8.  After she viewed the television commercial in 2001,  plaintiff's attorney sent a "cease and desist" letter to Crossroads Mall, claiming that the use of the Song in connection with the Kids Club constituted a copyright infringement.  *See* November 20, 2001 letter from T. Craig Harmon to Crossroads Mall, plaintiffs' Exhibit 7.  It is not disputed that Crossroads complied with that demand, and the Song has not been  used by the Kids Club at its meetings or in a commercial since the letter was received.

The court concludes that, based on the evidence before it,  plaintiff cannot show that it did not know  or have reason to believe that infringement had occurred until Hawkins saw the television commercial in November 2001.   In any event, the record also reflects no evidence of any alleged infringement occurring after that date.

The court concludes that plaintiff has not demonstrated a basis for equitably tolling the statute of limitations on its claims.  Accordingly, if plaintiff proves that the copyright was infringed, any damages that plaintiff may recover are limited to the three-year period preceding the April 20, 2004  filing of this lawsuit, or no earlier than April 20, 2001.

 Recoverable damages - statutory damages:

Defendants next argue that, if plaintiff proves its infringement claim and opts to recover statutory damages, it cannot recover for the infringement of more than one "work."  Plaintiff contends that the Song and the CD on which it appears constitute two "works" for infringement purposes.

A copyright owner who prevails in an infringement action may elect to recover statutory

6

damages instead of actual damages.  17 U. S. C. § 504.  A single statutory damage award is allowed "for all infringements...with respect to any one work, for which one infringer is individually liable, or for which any two or more infringers are liable jointly and severally..."  17 U. S. C. § 504(c)(1). The amount recoverable is defined by statute as $750 to $30,000.  *Id.*  A single amount is recoverable, no matter how many acts of infringement occurred, where only one copyrighted work is involved.  The statute provides, in pertinent part:

> (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
>
> (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200...

17 U.S.C.A. § 504 (c) (1)(2).   Defendants contend that, if plaintiff prevails on liability and elects to recover statutory damages, it is limited to one damage award of $750 to $30,000 because only one work could have been infringed.

The parties agree that the Song was included in a CD which included other songs.  It is also not disputed that plaintiff holds a copyright registration number for the Song and a second registration number for the CD.  Plaintiff contends that, because there are two separate registrations, there are two "works" for purposes of statutory damages.

As defendants point out, the Copyright Act does not define a "work" for this purpose. However, the statute expressly provides that, in determining statutory damages, "all the parts of a compilation or derivative work constitute one work."   17 U. S. C. § 504(c)(1).   The courts addressing the question have determined that the fact that a separate copyright exists does not necessarily mean that more than one work is involved.  Instead, separate copyrights are not distinct works  "unless they can live their own copyright life."  Gamma Audio & Video, Inc. V. Ean-Chea, 11 F.3d 1106, 1116 (1st Cir. 1993).  *See also* MCA Television Ltd. v. Feltner, 89 F.3d 766, 769 (11th Cir. 1996), *cert. denied*, 520 U.S. 1117 (1997); Walt Disney Co. v. Powell, 897 F.2d 565, 569 (D.C. Cir. 1990);  Robert Stigwood Group, Ltd. V. O'Reily, 530 F.2d 1096, 1105 (2d Cir. 1976).   The issue is whether each copyrighted item has an independent economic value.  Gamma, 11 F.3d at 1117-18; Twin Peaks Prods., Inc. v. Publications Int'l., Ltd., 996 F.2d 1366, 1381 (2d Cir. 1993).

Defendants describe the CD as a compilation which, although copyrighted, is considered one work comprised of separate and independent songs.  17 U. S. C. § 504(c)(1); Country Road Music, Inc. v. MP3.com, 279 F. Supp. 2d 325, 332 (S. D. N. Y. 2003).   The only use at issue in this case is the melody of the Song, as it is not disputed that the lyrics were not used and that some musical instruments were added for use in the Kids Club theme.   Thus, defendants argue, the separate melody of  the Song utilized for the Kids Club theme cannot be separately considered a "work" for purposes of statutory damages.

In response, plaintiff offers no authority to support its contention that more than one work was infringed in this case.  While plaintiff argues that defendants may have selected the Song because the music  features a guitar player whose skills have been recognized by his peers, it offers no evidence to support that argument.  Plaintiff cites no statutory provision or court decision which

supports a claim that the music on the Song constitutes a separate work for purposes of statutory damages.

The court concludes that, based on the authorities cited by defendants and located by the court, only one work is at issue for purposes of statutory damages. Therefore, if plaintiff prevails on its infringement claim and opts for statutory damages, such damages are recoverable only for one work.

Enhanced damages:

Enhanced statutory damages are available when plaintiff sustains the burden of proving that the copyright infringement was committed willfully . 17 U. S. C. § 504(c)(2). The decision to award enhanced statutory damages is within the court's discretion; if the court, in its discretion, decides that such damages are proper, it may increase the statutory damage award up to $150,000[3]. *Id.*

Plaintiff initially sought enhanced damages from each defendant, contending that each willfully infringed the copyright. However, in response to the motion for partial summary judgment, plaintiff withdraws the enhanced damages claim against Cox; the claim continues to be asserted against the remaining defendants.

Defendants contend that the undisputed material facts establish that, as a matter of law, plaintiff is not entitled to enhanced statutory damages because it cannot show that any defendant acted willfully. In the context of a copyright infringement, willfully is defined as " with knowledge that the defendant's conduct constitutes copyright infringement." 4 Nimmer, Nimmer on Copyright § 14.04[B][3].

---

[3]The current statutory damages award is a range of $750 to $30,000. 15 *U. S. C. § 504(c)(1).*

In support of its argument, defendants point to the evidence in the record that , although Smith agreed that plaintiff should be paid royalties if the Song was used for a "commercial purpose," that he did not believe that using the Kids Club theme at the opening and closing of each event constituted a "commercial purpose." Defendants further point to the evidence that Macerich did not know of plaintiff's objection to the use of the Song until it received the November 20, 2001 cease and desist letter from plaintiff's attorney and the undisputed fact that, thereafter, it did not use the Song.

In response, plaintiff argues that the evidence also shows that Pamela Hawkins expressly told Smith that she objected to the use of the Song in the theme song during the opening and closing of its events. According to her affidavit, when she received notice from Smith that the Kids Club theme song was regularly used at meetings, she telephoned Smith to notify him that she considered such use a "commercial use." Hawkins affidavit, unmarked exhibit to plaintiff's response brief, ¶ ¶ 6-9. Plaintiff further argues that Macerich was aware that the Song was copyrighted material because Christi Parks, Senior Marketing Manager for the mall ("Parks"),  had been told by Smith that, if the theme song was used commercially, royalties would be payable to plaintiff. *Id.,* ¶ 8. In her deposition, Parks testified that, prior to the development of the television commercial featuring the Kids Club theme, Smith told Parks that the music originated with someone else and that it might be necessary to compensate the original author. Parks dep., unmarked exhibit to plaintiff's response brief, p. 62, lines 1-19. Parks did not recall the exact dates of her conversations with Smith. *Id.*, lines 20-25; p. 63, lines 1-2.  Because Parks was responsible for the marketing for Macerich, plaintiff contends, her knowledge is attributable to it.

Smith testified in his deposition that he was not aware that the Kids Club theme song had

been used in a television commercial until he saw the November 2001 cease and desist letter; he also testified that such use, in his opinion, did not constitute a commercial purpose requiring payment of royalties to plaintiff.  Smith dep., defendants' Exhibit 1 to reply brief, p. 44, lines 20-24.  In another portion of his deposition, however, he also testified that using a song in a commercial would be considered use for a commercial purpose.  Smith dep., submitted as an unmarked exhibit to plaintiff's response brief, page 66, lines 5-13.  He further testified, however, that his understanding of a commercial use which would require payment of royalties to plaintiff was the sale of a CD.  *Id.,* page 65, lines 8-19.    In her affidavit, plaintiff Hawkins disagrees with Smith's understanding of a commercial use, as she obviously believes that anything other than an "occasional" use of the theme song would entitle her to royalties.  Hawkins affidavit, unmarked exhibit to plaintiff's response brief, ¶¶ 5-7.

The record reflects that Hawkins and Smith were the only individuals having direct communications regarding the manner in which the Song could be used without payment of royalties.  Smith's correspondence supports his view that using the theme song to open and close the meetings did not constitute a commercial use.  Smith letters to Hawkins of March, 2001 and July 2001, defendants' Exhibits 1 and 2.  As indicated above, however, Hawkins states that she told Smith  she believed these were commercial uses for which she should be compensated.

It is evident from the record  that Hawkins and Smith now disagree with regard to what constitutes a commercial use of the Song.   That they disagree does not necessarily mean that Smith willfully infringed the copyright; neither does it show that he and Macerich acted without willfulness.  The court concludes that the record reflects disputed facts regarding the agreement between Smith and Hawkins and the issue of willfulness.  To some extent,  the credibility of these

witnesses may be relevant to determining this issue.   Credibility determinations are, of course, not proper for summary adjudication.  *See, e.g.*,   Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135  (2000) (citations omitted).

Although  plaintiff's evidence is limited on the issue of willfulness, it constitutes "more than a mere scintilla" and, therefore, summary judgment is precluded on this issue.  Anderson, 477 U.S. at 247-48.   If it is determined at trial that the copyright was infringed and plaintiff seeks statutory damages, the court will determine, in its discretion, whether enhanced damages are supported by the evidence.  Defendants' motion for partial summary judgment on this issue is denied.

Indirect profits:

Defendants next argue that  plaintiff cannot, as a  matter of law,  recover damages based on indirect  profits  because it cannot  establish  any  non-speculative  evidence  showing  a  causal connection  between  the  infringement  and  any  profits  generated  indirectly  as  a  result  of   the infringement.   Plaintiff  argues  that  the  defendants  derived  a  measurable  benefit  from  the unauthorized use of the Song or, at a minimum, they have submitted sufficient evidence to create a  material fact dispute on this issue.  Further, plaintiff argues, documents which are in part the subject of its motions to compel may provide additional evidence relevant to this issue.

Recoverable damages for a copyright infringement may include  both direct and indirect profits, as provided by 17 U. S. C. § 504(b). Although the statute does not expressly refer to direct and  indirect  profits,  courts  considering  the  damages  recoverable  for  an  infringement  have distinguished between the two types of damages.  Generally, direct profits  are those derived from the infringer's sales of the infringed work, while indirect profits represent the benefit derived by the infringing party as a result of the infringement.  *See generally* Mackie v. Rieser, 296 F.3d 909, 914

(9th Cir. 2002).    Indirect profit awards are relatively rare because courts have found them too speculative.  *Id.,* at 913.  However, they may be recovered if the plaintiff proves that such profits are ascertainable and proves a causal link between the infringement and the indirect profits.  Mackie, 296 F.3d at 914.

To survive a motion for summary judgment on this issue,  plaintiff has the burden of presenting "sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Id*. at 915.   If there is evidence that profits were derived from both infringing and non-infringing sources, defendants then bear the burden of proving the apportionment of such damages.  Andreas v. Volkswagen of America, Inc., 336 F.3d 789, 796 (8th Cir. 2003).

The evidence in the record shows that defendants did not receive a direct monetary benefit from the use of the Song in connection with the Kids Club or the commercial.   Participants in the Kids Club were not charged a fee, and  no compensation was paid to the mall by those attending Kids Club events.   It is also not disputed that copies of the Kids Club theme song were not sold. However, it is also agreed that the theme song  was included in a television commercial that was broadcast from May 2000 to November 2000 and from January 2001 through October 2001.  The Kids Club theme song was also placed on an audio cassette tape, and tapes were distributed to those attending the Kids Club events.

In June 2000, Crossroads Mall purchased 260 audio cassette tapes of the Kids Club theme song.  The advertising agency which produced the Kids Club commercial utilizing the Song arranged to make the audio cassette tapes, and  the owner understood that the tapes were to be distributed to those attending the Kids Club events at the mall.  Deposition of Ron Smart, p. 42, lines

19-20, plaintiff's Exhibit C to its supplemental response brief.  There is no evidence that any audio cassette tapes were ever sold; however, defendants acknowledge that the tapes were distributed to those attending the Kids Club events at Crossroads Mall.  Defendants' supplemental reply brief, ¶ 3.  Defendants argue that the purpose of the cassette distribution was to assist the children in learning the lyrics to the Kids Club theme song.  Plaintiff contends that the purpose was to promote the mall and, ultimately, increase revenue.

Although defendants describe the Kids Club as a community service activity,  plaintiff argues that one of its goals  was to increase mall sales by generating increased mall traffic during Kids Club events. Plaintiff contends that defendants indirectly profited from the alleged infringement because the Kids Club meetings and commercial created additional  customers for Crossroads  and, as a result, increased sales.  Because the mall merchants' rent is based in part on sales, plaintiff argues, Macerich received a benefit from increased sales resulting from the use of the Song in Kids Club activities and the commercial.  Further, plaintiff argues, cassette recordings of the Kids Club theme were distributed at the events; although this was free of charge, plaintiff argues that distribution   was a promotional activity which ultimately benefitted the mall.

Leases for most tenants at Crossroads Mall require the tenants to pay, as part of their rent, a percentage of sales after the sales reach a certain threshold.  Parks dep., defendants' Exhibit 5, p. 39, lines 7-15.  To calculate these amounts, tenants are required to report monthly sales figures to Macerich.  *Id.*  Tenants do not report sales on a daily basis, and Macerich has no means of determining daily sales figures.  C. Parks dep., p. 40, lines 3-6.

Plaintiff has, in fact, filed a motion to compel defendants to produce daily revenue records for the relevant time period.  Defendants have objected, initially stating that daily revenue records

are not maintained by the mall and that the only records are monthly records.  Even if daily records existed and such records showed an increase in merchant sales during Kids Club events, defendants argue, there is no way of showing that the Song, rather than the Kids Club itself or other promotional activities, generated the increased sales.  Thus, defendants argue, even if sales increased during the relevant period, that evidence would be  too speculative to satisfy plaintiff's burden of showing a causal connection between the profits derived and the alleged infringing use of the Song.

In support of its argument, defendants point to court decisions rejecting the recovery of indirect profits where a copyrighted item was used as a part of a promotional activity.  *See, e.g.,* Mackie, 296 F.3d at 912.  In Mackie, the Seattle Symphony Orchestra hired a graphic artist to design a direct-mail subscription brochure for its  annual season.  As a part of the brochure, the designer created a montage of photographs of various images of Seattle and its culture.  Among the items utilized was a photograph of a bronze sidewalk installation known as "The Dance Steps," a copyrighted work by another Seattle artist.   296 F.3d at 912.

The montage was included in a twenty-four page promotional brochure mailed to approximately 150,000 individuals.  The copyright owner brought a copyright infringement action.  Among the damages  sought were indirect profits for future Symphony seasons; he argued that subscriptions were renewed because of the infringed  work.  *Id.* at 913.

The district court granted the symphony's motion for summary judgment on the issue of indirect profits; the  Ninth Circuit affirmed that decision, finding that plaintiff had failed to present sufficient evidence to establish a causal link between the infringement and the symphony's revenues.  296 F.3d at 916.  The court held that the plaintiff in such cases must present sufficient, non-speculative, evidence to support a causal link between the infringement and the resulting profits.

*Id.*   The court noted that plaintiff  could not do so because the decision to renew a subscription could be based on many factors, and it was speculative to determine the number of people who did so because of the inclusion of the  infringed work.   Further, the court observed, the connection between the infringement and the profits was further attenuated because the work was one portion of a montage included on one page of a multi-page brochure.  296 F.3d at 916.

In response, plaintiff argues that the facts in <u>Andreas</u> , 336 F.3d 789, are  similar to the facts of this case.  In <u>Andreas</u>, defendant  utilized a copyrighted phrase as the theme for commercials advertising the Audi TT coupe automobile upon its initial release in the United States market.  The court found that plaintiff had sufficient evidence to establish the nexus between the infringement and the defendant's increased profits.  In reaching that conclusion,  the court noted that the commercial was designed to introduce and sell the automobile and that the infringing phrase was the "centerpiece" of the commercial that showed nothing but the automobile.  336 F.3d at 796-97.   The evidence showed that sales substantially exceeded expectations during the time period in which the commercial aired, the commercial received high ratings in surveys rating consumer recall of commercials, and the advertising agency was paid a substantial bonus based on the success of the commercial.  *Id.* at 797.

In this case, the melody of the Song, with new lyrics and added instrumentation, was used in the theme song for the Kids Club which was, in turn, included in a television commercial for the Kids Club and sung at the opening and closing of the meetings.   An audio cassette of the theme song was distributed free of charge to those attending.   Even if plaintiff can show that mall revenue increased during the days on which the Kids Club met or the television commercial was shown, it is speculative to conclude that the increase resulted from the use of the copyrighted  melody for the

theme song rather than the existence of the Kids Club itself.  The record shows that the Kids Club

events began before the Song was utilized.  The television commercial apparently was not broadcast

until after the theme song was included; however, even if plaintiff could show that mall revenues

increased after the television commercial began, it is speculative to conclude that the increase

resulted from the use of the melody of the Song.    Even if the theme song itself could somehow be

shown to have resulted in increased revenue, it is even more speculative to conclude that the melody,

rather than the lyrics or the additional instrumentation, caused that increase.

Accordingly, the court concludes that plaintiff's  basis for the recovery of  indirect profits

is too speculative to create a material fact question on this issue.  Even if the evidence shows that

mall profits increased during the months in which the commercial aired or the meetings were held,

the argument that the increase resulted from the inclusion of the Song melody in the commercial is

too attenuated to create the nexus required to show causation.  Thus, defendants' motion for

summary judgment is granted on this issue.

Based on the foregoing, the defendants' motion for summary judgment [Doc. No. 56] is

GRANTED in part and DENIED in part.  The motion is GRANTED on the issue of the statute of

limitations and the contention that plaintiff can only obtain one set of statutory damages because

only one "work" is involved.  The motion is DENIED on the issue of the availability of enhanced

statutory damages, as fact disputes preclude summary judgment on that issue.  The motion is

GRANTED on the issue of indirect profits.

IT IS SO ORDERED this  _27th_  of December, 2005.

RALPH G. THOMPSON
UNITED STATES DISTRICT JUDGE